L. F. HUTCHERSON, Appellant, v. A. D. THOMPSON, H. T. SMITH, H. S. SMITH, J. W. HALDEMAN and WILL HALL.—123 S. W. (2d) 142.

Division Two, December 20, 1938.

*Rendlen, White & Rendlen, P. J. Fowler, L. F. Cottey, A. D. Campbell* and *John Campbell* for appellant.

*Walter Hilbert, H. S. Rouse, Waldo Edwards, Mahan, Mahan & Fuller* and *Noah W. Simpson* for respondents.

886

COOLEY, C.—Action at law against the directors of a failed bank to recover deposits lost by reason of the alleged insolvency of the bank. The suit was filed May 19, 1933, in the Circuit Court of Lewis County. By change of venue it reached the Circuit Court of Marion County where, on April 15, 1935, plaintiff filed an amended petition. On motion of defendants the court struck out said amended petition and dismissed plaintiff's cause of action. Plaintiff appealed. The only question presented on this appeal is as to the propriety of the court's action in striking out plaintiff's amended petition and dismissing his cause of action. We shall refer to the parties here as plaintiff and defendants as they were styled below.

The original petition was in 49 counts, the first seeking recovery for the aggregate amount claimed to have been lost by plaintiff himself and the others for losses sustained by other depositors who had assigned their claims to him. The amended petition is in 197 counts. It seeks recovery for the same losses but sets out in a separate count each deposit of each depositor. For the purposes of this appeal it will be sufficient to set out the first count of each petition, which are as follows:

"1st Count

"Par. 1. Plaintiff states that at all of the times herein mentioned the Home Savings Bank of La Belle, Missouri, was a corporation, organized and existing under and by virtue of the laws of the State of Missouri, and as such was engaged in the general banking business in the town of La Belle in Lewis County, Missouri; that the defendants at all times herein mentioned were and for a long period

preceding said date were the duly elected, qualified and acting directors of said bank and during said period of time were and had been in the actual charge of the business thereof; that during all of said time said Home Savings Bank of La Belle, Missouri, was insolvent and in a failing condition, all of which the defendants well knew.

"Par. 2. Plaintiff, during said period of time, deposited various sums of money in said Home Savings Bank to his credit and at the date of the closing of said bank, to-wit, January 30, 1932, the balance on deposit in said bank in favor of and due to plaintiff was $1179.31.

"Par. 3. Plaintiff further states that on said last named date said bank was duly placed in the hands of the State Finance Department of the State of Missouri, because said bank was insolvent, and ever since said date the same has been and still is in charge of said Finance Department of the State of Missouri; that on account of the insolvent condition of said bank, plaintiff has been unable to collect any part of the above named balance due him by said bank.

"Par. 4. WHEREFORE, Plaintiff prays judgment against the defendants and each of them for said sum, together with interest at the rate of 6 per cent per annum from the date said bank closed, and for the costs of this action."

## "AMENDED PETITION

### "1st Count

"Paragraph 1. Plaintiff, for amended petition, states that at all of the times herein mentioned the Home Savings Bank of La Belle, Missouri, was a corporation, organized and existing under and by virtue of the laws of the State of Missouri, and as such was engaged in the general banking business in the town of La Belle in Lewis County, Missouri; that the defendants at all times herein mentioned were and for a long period preceding said date were duly elected, qualified, and acting directors of said bank and during all of said period of time were and had been in the actual charge of the business thereof; that during all of said time said Home Savings Bank of La Belle, Missouri, was insolvent and in a failing condition, all of which the defendants and each of them well knew.

"Paragraph 2. Plaintiff, on the 30th day of October, 1931, deposited in said Home Savings Bank of La Belle to his credit the sum of $2,000.00, and said sum was by said bank on said date received and credited to plaintiff's account therein; that thereafter, and before the closing of said bank, said plaintiff withdrew from said bank the sum of $1100.69 of said deposit and that on the said January 30th, 1932, at the date of the closing of said bank, there was due to plaintiff the sum of $899.31 on account of said deposit.

"Paragraph 3. Plaintiff further states that on January 30th, 1932, said bank was closed and by the defendants duly placed in the hands of the State Finance Department of the State of Missouri, because said bank was insolvent, and ever since said date the same has been and still is closed and in charge of said finance department of the State of Missouri; that on account of the insolvent condition of said bank and because said bank was and still is so closed, the deposits in said bank have not been paid to the owners of said deposits, and the depositors of said bank have been unable to collect said deposits, and plaintiff has been unable to collect said sum so due him from said bank.

"Paragraph 4. WHEREFORE, plaintiff prays judgment against the defendants and each of them for said sum of $899.31, together with interest at the rate of 6 per cent per annum from the date, January 30th, 1932, said bank closed, and for the costs of this action."

In the original petition the second count repleads by reference paragraphs 1 and 3 of the first count, alleges a deposit made by H. M. Lipes and the assignment of his claim to plaintiff and prays judgment as in the first count. In the amended petition counts 2, 3 and 4 are like count 1, except each alleges a separate deposit, giving date and amount thereof. The 5th count repleads by reference paragraphs 1 and 3 of the first count, alleges a deposit by H. M. Lipes and withdrawal of a named portion, giving dates and amounts and balance remaining when the bank closed, alleges the assignment by Lipes of his claim to plaintiff and prays judgment.

Plaintiff does not set out in his abstract of record the other counts of either petition but states that in the original petition counts 3 to 49, inclusive, are in the same langauge as count 2 thereof except for the name of the depositor who had assigned to him and the balance due; that the depositors named in the original petition were the same as those named in the amended petition and the deposits were the same; that in the original petition the pleading described the balance due when the bank closed while in the amended petition the separate deposits were described each in a separate count; that the aggregate amount sued for in each petition is the same, viz., $35,000. It is also stated in the abstract that in the amended petition counts 6 to 197, inclusive, are the same as count 5, except that each sets out a separate deposit, with the name of the depositor and the date and amount of the deposit.

It is agreed by the parties that said statements in the abstract are correct and that the abstract sets out all of the record necessary to an understanding of the questions presented for our decision, as clearly it does. Said agreement is incorporated in the abstract.

The record does not show on what specific ground the circuit court held plaintiff's original petition insufficient to state a cause of action, but that it did so hold seems apparent from the judgment, which not only struck out the amended petition but at the same time and as part of the judgment dismissed plaintiff's cause of action. Defendants did not attack the amended petition by demurrer. Instead they filed a motion to strike it out and to dismiss plaintiff's cause of action on the grounds that the original petition failed to state any cause of action against defendants, and that when the amended petition was filed, April 15, 1935, more than three years had elapsed since the bank closed on January 30th, 1932, and that, as the original petition stated no cause of action his action had become barred by "the three year Statute of Limitation," to-wit, Section 863, Revised Statutes 1929 (Mo. Stat. Ann., p. 1150). The record recites that the court, having considered the motion and being fully advised "doth consider that said motion should be and therefore said motion is sustained, and plaintiff's petition is hereby dismissed by the court and plaintiff's cause of action is hereby dismissed.'" It is apparent that the court proceeded upon the theory that the original petition stated no cause of action, that plaintiff's cause of action had become barred by limitation and that therefore he could not maintain an action for the relief sought. Such is defendant's contention here.

The action is bottomed on Section 5381, Revised Statutes 1929 (Mo. Stat. Ann., p. 7600), which provides that "no president, director, manager, cashier, or other officer or agent of any bank . . . shall receive or assent to the reception of deposits, . . . after he shall have knowledge that it is insolvent or in failing circumstances," and that every person violating the provisions of said section "shall be individually responsible for such deposits so received. . . ." In the case before us defendants' principal contention is that the petition did not allege that they received or assented to the reception of the deposits in question. By the terms of the statute it is not necessary in order to create liability that the director or officer shall himself receive the deposit. It is sufficient that he assents to the reception thereof with knowledge of the insolvency or failing condition of the bank. So the dispute in this case gets down to the question of whether or not said petition sufficiently charges that defendants assented to the reception of the deposits. We think it does.

Defendants stress the contention that the statute is penal and must be strictly construed and that in order to state a cause of action under it the pleader must bring himself within its terms and provisions. They cite a number of cases announcing such to be the rule. Illustrative, see Brockman Commission Co. v. W. U. Tel. Co., 180 Mo. App. 626, 163 S. W. 920, where the court said, 180 Mo. App.

l. c. 631, 163 S. W. l. c. 922, speaking of the statute providing a fixed penalty for failure of a telegraph company to promptly transmit a telegram: "The statute is, of course, penal in its nature. It is to be strictly construed; and plaintiff, in order to recover, must bring itself clearly within the terms and provisions thereof." Such is the general rule as to penal statutes and for the purposes of this case it may be conceded without discussion that the statute in question is penal in character, as it has several times been held to be, at least as to the liability imposed; though we observe that this court en banc held, in Cummins v. K. C. Pub. Serv. Co., 334 Mo. 672, 683, 698, 66 S. W. (2d) 920, that a statute may be in part penal and in part remedial. In Houston v. Wilhite, 224 Mo. App. 695, 699-700, 27 S. W. (2d) 772, 775, the court, in holding a claim arising under Section 5381, supra, assignable, recognized said statute as penal in view of what this court had said in Utley v. Hill, 155 Mo. 232, 263, 55 S. W. 1091, but said that it is not penal in the sense that the cause of action cannot be assigned, and that: "There is no mulct or forfeiture prescribed against the officers as punishment for their default. [Fitzgerald v. Weidenbeck, 76 Fed. 695.] The depositor cannot collect from the directors any sum greater than the debt owed him by the bank. [White v. Poole, 220 Mo. App. 973, 272 S. W. 1021, 1028.] Therefore, the Constitution or the statute, although imposing a liability having some of the characteristics of a penalty, is not a penal statute as such statutes are ordinarily understood." It may be further observed, as indicating that said statute was intended to be at least partly compensatory or remedial, that Section 5383, Revised Statutes 1929 (Mo. Stat. Ann., p. 7602), part of Article II, Chapter 34, in which article Section 5381, supra, appears, provides that "This article shall extend to and may be enforced by and against the executors and administrators of such deceased officers, agents and managers."

But perhaps we have gone somewhat afield in the above observations relative to whether or not the statute in question is to be regarded as strictly penal. The question before us is not as to the meaning or construction of the statute, but one of pleading. So far as concerns the question here presented the statute is plain and unambiguous and needs no extrinsic aids to construction. It plainly requires that the officer charged shall have assented to the reception of the alleged deposits in order that there be liability. The cases cited by defendants, in their ultimate analysis, deal with the construction of the various statutes referred to rather than with questions of pleading, except insofar as they hold that, the statutes respectively referred to being penal, it was necessary for the plaintiff to allege all the facts necessary to bring his case clearly within the terms and provisions of the

statute. No case is cited directly in point on the question of pleading here involved except Ivie v. Bailey, 319 Mo. 474, 5 S. W. (2d) 50, cited by plaintiff. That was an action under Section 5381, supra, to recover deposits, similar to the instant case. The petition in the Ivie case is not set out but only summarized in the opinion. By reference to the files of the case in our clerk's office we find that in the respect here in question it was essentially the same as the one now before us. It was apparently treated by this court en banc as stating a cause of action, but without discussion of or reference to any claimed or supposed infirmity other than the alleged unconstitutionality of the statute. For that reason and because of the earnest insistence of counsel that the specific question they now press has never been really decided by this court or our Courts of Appeals we are unwilling to dispose of the case by merely referring to the Ivie case as a precedent. It can hardly be so considered as to the specific point in question, since such point seems not to have been there urged by counsel or noticed by the court.

It is generally true, whether an action is bottomed upon a penal statute or not, that the plaintiff must allege the facts which must be proved in order to entitle him to recover. But as to the manner of stating such facts or whether the petition sufficiently states them we perceive no reason why the petition should be scanned with more censorious eye and frigid spirit in one kind of civil action than in another. By Section 763, Revised Statutes 1929 (Mo. Stat. Ann., p. 983), the forms of pleading in civil actions in courts of record and the rules by which the sufficiency of the pleadings are to be determined, "except as otherwise specially provided by law," are prescribed in Article V of the Code of Civil Procedure, Chapter 5 of Revised Statutes 1929. This action is a civil action and we know of no special statutory provision taking it or similar actions out of the operation of the general code governing pleadings. Section 801, Revised Statutes 1929 (Mo. Stat. Ann., p. 1052), a part of said code, provides: "In the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." Said Section 801 (Sec. 2074, R. S. 1889) was applied in Baird v. Citizens' Ry. Co., 146 Mo. 265, 48 S. W. 78, an action by the mother (the father being dead) of a minor child for "damages" under Section 4425, Revised Statutes 1889, for the child's death caused by the negligence of the defendant's servants in charge of its train. In that case the defendant claimed that the statute only gave a right of action when the minor child died unmarried and that as the petition failed to state that said child died unmarried it stated no cause of action. This court said the defendant's position was correct unless

it "appears from the petition that the deceased was of such tender years as to justify the inference that he was unmarried and childless at his death;" but that the petition alleged that the child was six years of age at the time of his death and (said the court) as he was therefore incapable of entering into a contract of marriage, "in view of the code rules requiring a liberal construction of pleadings (R. S. 1889, sec. 2074), and directing courts to consider substance rather than form (R. S. 1889, sec. 2117)," the petition must be held to have sufficiently alleged that the deceased was unmarried. To like effect see McIntosh v. Mo. Pac. Railroad, 103 Mo. 131, 15 S. W. 80; Czezewzka v. B.-B. Railroad, 121 Mo. 201, 25 S. W. 911.

While in said Baird case the court did not mention that the statute under which the action was brought was penal it was in fact what has sometimes been called the wrongful death statute and was and is at least as much a penal statute as is that under which the present action proceeds. [See Casey v. St. L. Transit Co., 116 Mo. App. 235, 91 S. W. 419, same case, 205 Mo. 721, 103 S. W. 1149, wherein said Sec. 4425, R. S. 1889 (Sec. 2864, R. S. 1899), was construed.]

█ Summarizing briefly the allegations of the original petition herein it stated that during the time involved the bank was a Missouri corporation engaged in the general banking business; that defendants were its directors and in actual charge of its business; that it was insolvent and in failing condition, all of which defendants well knew; that he deposited money in the bank; that the bank thereafter was closed and placed in the hands of the State Finance Department because of its insolvency and his money was thus lost to him.

In connection with those specific allegations regard must be given to statutory provisions, of which courts take judicial notice without their being pleaded. [The statutory provisions hereinafter referred to will be found, unless otherwise indicated, in Revised Statutes of 1929, and under corresponding section numbers in Mo. Stat. Ann., Vol. 11, under title "State Department of Finance."]

Section 5344 et seq., provide for the incorporation of banks and Section 5354 authorizes banking corporations to (among other things) "conduct the business of receiving money on deposit"—(a very important part of a bank's business).

By Section 5363 "The affairs and business of the corporation shall be managed by a board of directors or managers" who, by Section 5364, are required to take oath that they will faithfully and diligently administer the affairs of the bank and not knowingly violate or willingly permit to be violated any provision of law applicable to the bank. By other statutory provisions the directors are required to hold regular meetings at least once a month, to make certain reports to the Commissioner of Finance showing the financial condition of

the bank, its assets and liabilities, etc., giving among other specific items the amount of deposits, such reports to be published in a newspaper of general circulation in the community. Under paragraph 3 of Section 5316 the bank may, if it desires, place its affairs and assets under the control of the Commissioner of Finance, and by Section 5318 if it finds itself in failing condition it *"shall immediately* place itself in the hands of the commissioner." (Italics ours.) The statute makes provisions for the liquidation of the bank by the Commissioner of Finance or its resumption of business with his permission. These provisions need not be here noticed. Suffice it to say that when placed in the Commissioner's hands the bank ceases to receive deposits or do a banking business until, if at all, its affairs are straightened out and the Commissioner of Finance permits it to resume business.

We have mentioned these statutory provisions to show that the Home Savings Bank *could not* have remained open and "engaged in the general banking business," as alleged in the petition, without the assent of the directors. When the statute speaks of the bank doing certain things, as for example that it shall place itself in the hands of the Commissioner when it finds itself in failing condition, that of course means that it shall do so by and through its directors, the only way in which the bank can so act.

Now, since the reception of deposits is a vital (and if we know bankers a much desired) part of the business of a bank engaged in the general banking business, the fact that such bank is so engaged and is open for business is a standing invitation to the public to deposit money therein. And since, as we have shown, the bank cannot remain open, receiving deposits as a part of its "general banking business" as it of course expects to do, without the assent of the directors, how can it be said that they did not assent to the reception of the deposits? If banker A asks B to deposit money in his bank and B does so, does not A thus assent to the deposit? We do not believe it necessary that the directors should have specifically assented to each separate deposit or by express words have voiced assent to any. Assent may be indicated—expressed, if you please—by acts and conduct. If bank directors keep the bank open and thus invite deposits generally we think they may properly be said to thereby assent to each deposit made, at least absent some affirmative showing to the contrary.

In an action founded upon a public statute the petition need not distinctly mention or refer to the statute but is only required to plead the facts which bring the case within the purview of the statute. [Emerson v. St. L. & H. Ry. Co., 111 Mo. 161, 19 S. W. 1113; Moyer v. C. & A. Railroad Co. (Mo.), 198 S. W. 839; Williams

v. A. T. & S. F. Ry. Co., 233 Mo. 666, 136 S. W. 304.] Neither do we consider it necessary to use the exact words of the statute. In the instant case, while the assailed petition does not in specific words state that the defendant directors assented to the reception of the deposits in question, it states facts from which such assent appears, not merely inferentially but *necessarily*—as a corollary we might say of the facts specifically stated. We think defendants' assent to the reception of 'the deposits was sufficiently alleged.

Even were we to hold said original petition defective in the particular above discussed we think it would nevertheless be subject to amendment so as to save the bar of the Statute of Limitations, under our liberal statutes on amendments of pleadings, which, by Section 835, Revised Statutes 1929 (Mo. Stat. Ann., p. 1106), apply to actions for penalities as well as to other civil actions. Plaintiff was not given opportunity to amend further after his amended petition was stricken. His *cause of action* was dismissed at the same time and by the same order and judgment which struck out said amended petition.

In Adcox v. W. U. Tel. Co., 171 Mo. App. 331, 157 S. W. 989, an action for penalty for failure to promptly transmit a telegram, the original petition charged that the defendant's agent agreed to collect the usual charges from the addressee, which allegation did not bring the case within the penal statute, said statute applying only where the usual charges were paid or tendered in advance. The plaintiff was permitted to amend his petition so as expressly to allege that the charges for the telegram were tendered at the time it was delivered for transmission. The amendment was held permissible under our statute. The court said the fact that the action was under a penal statute ''does not change the law in relation to pleadings in the case.''

Cytron v. St. L. Transit Co., 205 Mo. 692, 104 S. W. 109, was an action under the wrongful death statute giving a cause of action to the father and mother jointly for the death of a minor child. The father alone sued. After the statutory limitation period had run an amended petition was filed making the mother a co-plaintiff. This court en banc held the amendment permissible. It said, 205 Mo. l. c. 700, 104 S. W. l. c. 111.

'' 'What is the proper judicial attitude toward amendments with reference to the Statute of Limitations?' As said in Walker v. Railroad, supra: 'The answer, in the language of NAPTON, J., in Lottman v. Barnett, 62 Mo. l. c. 170, is: ''Amendments are allowed expressly to save the cause from the Statute of Limitations, and courts have been liberal in allowing them, when the cause of action is not totally different.'' The rule thus announced is steadily applied.

[Lilly v. Tobbein, 103 Mo. 1. c. 490-1; Courtney v. Blackwell, 150 Mo. 1. c. 271-2.]' ''

Other authorities might be cited on the proposition that the original petition was subject to amendment even if it were held insufficient, but in view of our conclusion that it stated a cause of action we shall not lengthen this opinion by further discussion of said proposition. We have not considered whether or not it was subject to a timely motion to make more definite.

Mention is made in respondents' brief of the fact that the original petition did not state the amount of each deposit or the time when made but only alleged the balance due when the bank closed. That point is not stressed in the brief and we cannot tell therefrom whether or not respondents mean to contend that said petition was not amendable in that respect. In any event there can be no question but that it was subject to amendment in those particulars, and it was so amended. The amended petition could not properly have been stricken on such ground. The same evidence required under the original petition would support the amended petition and the same measure of damages would apply.

The judgment is reversed and the cause is remanded with directions to the circuit court to set aside its judgment, reinstate the cause and proceed therewith in accordance with the views herein expressed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Tipton* and *Ellison, JJ.*, concur; *Leedy, J.*, dubitante.